724 F.Supp. 1048 (1989)
Alan L. FITZGIBBON, Plaintiff,
v.
AGENCY FOR INTERNATIONAL DEVELOPMENT, et al., Defendants.
Civ. A. No. 87-1548.
United States District Court, District of Columbia.
November 16, 1989.
James H. Lesar, Washington, D.C., for plaintiff.
Marina Utgoff Braswell, U.S. Dept. of Justice, Office of Information & Privacy, Washington, D.C., for defendants.

MEMORANDUM OPINION
JOHN H. PRATT, District Judge.
Plaintiff brings this action under the Freedom of Information Act, 5 U.S.C. § 552 (1988) ("FOIA" or the "Act"), challenging agency denials of fee waiver requests.[1] *1049 The only remaining defendants are the Department of Defense ("DOD") and the Department of Justice ("DOJ").[2] Before the Court are the parties' cross-motions for summary judgment. This matter appears to be one of first impression.

I. Factual Background

On July 22, 1986, plaintiff made written requests to defendants for a copy of each annual report on their implementation of FOIA submitted since the mid-1970s.[3] DOD's initial response was to inform plaintiff that its annual reports were available in its public reading room and that plaintiff could inspect the copies there, or obtain a copy of DOD's Executive Summaries of the reports for $31.70, or obtain a copy of the full reports for $300.[4] By letter dated August 14, 1986, plaintiff requested a waiver of the entire $300 duplication fee. Plaintiff based his request on the fact that he was "researching a history of the FOIA and similar legislation abroad to be published in 1988." He stated that his project "fully qualifie[d] for a public interest fee waiver according to the provisions and legislative history of the Act itself and relevant case law."
DOD denied plaintiff's request for a fee waiver on September 5, 1986. The stated reason for the denial was that the reports, by virtue of their existence in DOD's public reading room, were "in the public domain." Plaintiff's administrative appeal of this decision was denied on October 9, 1986.[5] DOD's stated reason was that "as a matter of policy," records available in its public reading room were "not available on a fee waiver basis."
DOJ responded to plaintiff's July 22, 1986, request by mailing him copies of the annual reports for some of the years but not for others. By letter dated September 3, 1986, plaintiff requested copies of the omitted reports and certain additional information. At this time, plaintiff also requested a fee waiver. He stated that he was "a professional writer" who was "preparing a history of the FOIA and similar legislation abroad to be published in 1988," and that "[t]here [could] be no question that a published study of the FOIA would *1050 be in the public interest."[6] On August 6, 1987, after the commencement of this action, DOJ denied plaintiff's request for a fee waiver.[7] DOJ's letter stated that a waiver was inappropriate "because the documents [were] already in the public domain and release ... [would] not contribute to the public's understanding of government operations or activities since the public already has the information." The duplication fee for the annual reports is $48.

II. Discussion[8]
FOIA mandates de novo review in actions regarding fee waivers. 5 U.S.C. § 552(a)(4)(A)(vii). Courts are limited, however, "to the record before the agency." Id.
The Act's fee waiver test is two-pronged. One prong requires that the requester make a showing that he does not have a commercial interest in the disclosure of the information sought. See Larson v. CIA, 843 F.2d 1481, 1483 (D.C.Cir.1988) (citing McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987)); see also 5 U.S.C. § 552(a)(4)(A)(iii). Concededly, nothing in the record rebuts plaintiff's showing or indicates in any way that plaintiff has a commercial interest in obtaining information about defendants' implementation of the Act. Therefore, plaintiff satisfies this prong of the test. Larson, 843 F.2d at 1483.
The other prong of the test, which is the source of the parties' dispute, requires that disclosure of the information be "likely to contribute significantly to public understanding of the operations or activities of the government...." 5 U.S.C. § 552(a)(4)(A)(iii); Larson, 843 F.2d at 1483. The requester of a fee waiver bears the initial burden of identifying, with reasonable specificity, the public interest to be served, although circumstances may clarify the point of the request. See National Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C.Cir.1987); see also Larson, 843 F.2d at 1483. Factors to consider in determining whether a requester meets this prong of the test include the subject matter of the FOIA request and the requester's ability to disseminate the information to the public. See Larson, 843 F.2d at 1483.
Defendants have never challenged plaintiff's ability or intention to disseminate the requested information to the public. Nor have they contested that the information sought concerns "the operations or activities of the government...." 5 U.S.C. § 552(a)(4)(A)(iii). Indeed, they would be hard pressed to do so, since reports on agency implementation of FOIA by definition concern such matters. Instead, defendants rest their denials of plaintiff's fee waiver requests on the sole ground that the information sought already is in the public domain.[9] They claim that because the reports *1051 are available in their reading rooms,[10] further dissemination is not "likely to contribute significantly to public understanding of the operations or activities of the government...." Id. Hence, defendants argue, they need not furnish the information to plaintiff without charge. See id.
The Court finds defendants' position unpersuasive and without merit. The availability of FOIA material in an agency's public reading room does not thrust the material into the public domain. The public's awareness of information that, for all practical purposes, may be warehoused in an agency's reading room in the District of Columbia is likely to be dim at best, particularly to a resident in the wilds of western Montana. Defendants have not demonstrated the public's understanding of the information contained in the annual reports plaintiff seeks. Certainly, plaintiff's publication would be much more likely than defendants' reading rooms "to contribute significantly to public understanding of" agency implementation of FOIA.[11]Cf. United States Department of Justice v. Reporters Committee for Freedom of the Press, ___ U.S. ___, 109 S.Ct. 1468, 1477, 103 L.Ed.2d 774 (1989) ("Plainly there is a vast difference between the public records that might be found after a diligent search of courthouse files ... and a computerized summary located in a single clearinghouse of information."). Defendants' argument to the contrary is shortsighted and specious.
Based on the foregoing, the Court holds that defendants' denials of plaintiff's requests *1052 for fee waivers were improper. Accordingly, plaintiff's motion for summary judgment is granted and defendants' motion for summary judgment is denied. An Order consistent with this Memorandum Opinion has been entered this day.
NOTES
[1] Waiver requests normally encompass the costs of duplication or copying or both. Only the former, in the impressive amounts of $557.25 (DOD) and $48 (DOJ), are implicated in this attenuated proceeding.
[2] Plaintiff originally named the following 14 defendants: the Agency for International Development; the Board for International Broadcasting; the Commodity Futures Trading Commission; the Department of Agriculture; DOD; the Federal Energy Regulatory Commission; the General Services Administration; the National Mediation Board; the Office of Policy Development; the Office of Science and Technology Policy; the Overseas Private Investment Corporation; DOJ; and the Selective Service System. He has dismissed his action against all but DOD and DOJ.
[3] Under § 552(e) of the Act, agencies are required,

[o]n or before March 1 of each calendar year, [to] submit a report covering the preceding calendar year to the Speaker of the House of Representatives and President of the Senate for referral to the appropriate committees of the Congress. The report shall include 
(1) the number of [agency] determinations ... not to comply with requests for records ... and the reasons for each such determination;
(2) [information on administrative appeals];
(3) the names and titles or positions of each person responsible for the denial of records requested ...;
(4) [information on proceedings to determine whether disciplinary action is warranted against persons primarily responsible for improperly withholding requested documents];
(5) a copy of every rule made by such agency regarding [the Act];
(6) a copy of the fee schedule and the total amount of fees collected ... for making records available ...; and
(7) such other information as indicates efforts to administer fully [the Act].
5 U.S.C. § 552(e).
[4] The present duplication cost to plaintiff for the full reports would be $557.25. Defendants' Motion for Summary Judgment at 7, ¶ 18.
[5] In his letter of administrative appeal, dated September 9, 1986, plaintiff stated that he was "a professional writer who ha[d] frequently used the FOIA" and who "over the years [had] developed a considerable interest in the workings of the Act itself." He argued that there could be "no question that a published study of the FOIA would be in the public interest."
[6] Plaintiff also points out that he made similar requests to 90 government agencies, and that only DOD and DOJ denied his requests. Plaintiff's Cross-Motion for Summary Judgment at 3.
[7] Plaintiff claims that because DOJ did not act on plaintiff's fee waiver request until after this action was filed, DOJ's August 6, 1987, letter is not part of "the record before the agency," and hence should not be considered by the Court. 5 U.S.C. § 552(a)(4)(A)(vii). Because the Court finds that plaintiff is entitled to summary judgment in either event, we will assume arguendo that this letter is part of the administrative record.
[8] FOIA's fee waiver provision and the standard of review in actions regarding fee waivers were amended by the Freedom of Information Reform Act of 1986 ("FOIRA"). The changes, which became effective on April 25, 1987, apply retroactively to plaintiff's requests. See Freedom of Information Reform Act of 1986, Pub.L. No. 99-570, § 1804(b)(2).
[9] DOD purportedly based its denial of plaintiff's request on 32 C.F.R. §§ 286.14(j), 286.20(a) (1986). McDonald Aff. at 3-4. However, these regulations do not reflect a policy, as DOD would have us believe, that information available in DOD's reading room is considered to be in the public domain and therefore is not available on a fee waiver basis. After plaintiff commenced this lawsuit, DOD reevaluated  and adhered toits denial of plaintiff's request under revised regulations promulgated in light of FOIRA. Id. at 5-6. These regulations, like the earlier ones, fail to establish the "policy" asserted by DOD in this action. See 32 C.F.R. § 286.33(d)(3)(i) (1987). We note that even the most recent regulations, which at least suggest that consideration be given to whether the information already is in the public domain, are silent on the alleged link between availability in the reading room and denial of a fee waiver request. See id. (1988).

DOJ evaluated plaintiff's request under both the pre-FOIRA regulations and the revised regulations, which became final on September 2, 1987. Letter from Miriam M. Nisbet to Alan L. Fitzgibbon at 2 (Aug. 6, 1987) [hereinafter Nisbet Letter] (denying fee waiver request). However, neither of these regulations manifests a policy that information available in DOJ's reading room is considered to be in the public domain. The pre-FOIRA regulations do not even mention the public domain. See 28 C.F.R. § 16.10 (1987). The revised regulations state that the informative value of material sought may be diminished if the material already is "in the public domain," id. § 16.10(d)(2)(ii) (1988), but they fail to define the term. See id. § 16.10(j) ("Definitions").
[10] DOD based its denial of plaintiff's fee waiver request expressly and exclusively on its policy that records available in its reading room are in the public domain and therefore not available on a fee waiver basis. See Letter from Fred S. Hoffman to Alan L. Fitzgibbon (Oct. 9, 1986) (denying appeal); Letter from W.M. McDonald to Alan L. Fitzgibbon (Sept. 5, 1986) (denying fee waiver request). DOJ, however, offered plaintiff no explanation of why it believed that the information sought was in the public domain. See Nisbet Letter at 3. In response to this lawsuit, DOJ has offered several post hoc rationales for its action. In addition to emphasizing that the reports are available in its reading room, DOJ notes that the reports were sent to Congress, that selected information in them received some media attention, and that DOJ regularly prints a few extra copies of each report for distribution to requesters on a first come, first serve basis. Assuming arguendo that these rationales are timely, they do not alter our disposition of the case. Plaintiff introduced evidence of the substantial difficulty he would have in obtaining the reports from Congress. See Fitzgibbon Aff. ¶¶ 5, 11-13. Moreover, we find no reason to believe that the prior media attention cited by DOJ informed the public to such a degree as to preclude plaintiff from making a significant contribution to public understanding of agency implementation of FOIA. See Project on Military Procurement v. Department of the Navy, 710 F.Supp. 362, 366 (D.D.C. 1989) (notwithstanding prior media attention and issuance of report by DOD's Inspector General, public benefit likely to result from granting fee waiver request). It is common sense that a lengthy publication on the history of FOIA will be more informative on that particular subject than a newspaper article. Finally, that a few extra copies of the reports have been distributed to certain unidentified individuals does not suffice to place the reports in the public domain.
[11] Plaintiff's publication could inform members of the public all over the country, whereas defendants' method would limit dissemination to those individuals who: 1) knew that the information was available in reading rooms located here; 2) lived in proximity to the reading rooms or had the financial means and time to travel to the reading rooms; and 3) were willing to cull through the bureaucratic annual reports for the information they sought. Moreover, as to requesters, inspection in an agency's reading room is not a viable alternative to a fee waiver because many requesters not only are likely to live a great distance from the reading room, but as historical researchers or authors, must rely on the availability of and ready access to the documents.