**JUDICIAL WATCH, INC. Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. CIV.A. 99–01039.**

United States District Court, District of Columbia.

Sept. 8, 2000.

Larry Elliot Klayman, Klayman & Associates, PC, Washington, DC, for Judicial Watch, Inc.

Benjamin P. Cooper, U.S. Dept. of Justice, Washington, DC, Anne L. Weismann, U.S. Dept. of Justice, Civil Division, Washington, DC, for U.S. Dept. of Justice.

## MEMORANDUM OPINION AND ORDER

KENNEDY, District Judge.

In this action, plaintiff, Judicial Watch, Inc. (Judicial Watch), seeks judicial review of the response of defendant, the United States Department of Justice (DOJ), to Judicial Watch's request under the Freedom of Information Act, 5 U.S.C.A. § 552 (West 1996) (FOIA). Specifically, Judicial Watch challenges DOJ's refusal to release certain documents, DOJ's decision to deny Judicial Watch a fee waiver, and DOJ's decision not to categorize Judicial Watch as a representative of the news media. Presently before the court is DOJ's motion for partial summary judgment with re-

spect to DOJ components the Office of Information and Privacy (OIP) and the Civil Division on the fee-waiver and fee-category issues. Having reviewed DOJ's motion for partial summary judgment, the opposition thereto, and the record of the case, the court concludes that DOJ's motion should be granted.

## I. FACTUAL BACKGROUND

On October 28, 1998, Judicial Watch submitted a FOIA request to DOJ seeking:

all correspondence, memoranda, documents, records, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records, tape recordings, notes, electronic mail, and other documents and things, that refer or relate to the following in any way:

1) Orrin Hatch;
2) Bill Gates;
3) James L. Barksdale;
4) Marc Andreessen;
5) Microsoft Corporation;
6) Netscape Communications Corporation;
7) Novell, Inc.;
8) Eric E. Schmidt;
9) The White House.

Judicial Watch stated that it would "use the requested material to promote accountable government as a representative of the news media,"[1] and requested a blanket fee waiver.

On November 10, 1998, Margaret Ann Irving, Deputy Director of OIP, acknowledged receipt of Judicial Watch's request and "advised [Judicial Watch] that searches were being conducted . . . ."[2] The same letter notified Judicial Watch of OIP's decision to deny it a fee waiver and

to categorize Judicial Watch as an "all other" requester, rather than as a "representative of the news media."[3] In a follow-up letter on November 23, 1998, OIP informed Judicial Watch that it had completed the two hours of search time and duplication of 100 pages of records that FOIA allots requesters free of charge. OIP also advised Judicial Watch that it would suspend processing of the request until Judicial Watch promised to pay search and duplication fees. Judicial Watch appealed the agency's decision on January 11, 1999, and OIP upheld its decision.

On January 28, 1999, the Civil Division also denied Judicial Watch's fee-waiver and fee-category requests. The Civil Division informed Judicial Watch that it had concluded the required two hours of search time, and attached to the letter a list of case files located by the search. The Civil Division advised Judicial Watch that it would not continue processing Judicial Watch's request unless Judicial Watch executed a "written agreement to be bound for fees."[4] On March 29, 1999, Judicial Watch appealed the Civil Division's decision and filed the present action on April 27, 1999.

## II. LEGAL STANDARD

A motion for summary judgment should be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party's "initial responsibility" consists of "informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*

1. Letter of 10/28/1998 at 3, Def.'s Mot. for Partial Summ. J., Ex. 1.

2. Def.'s Statement of Material Facts at 2.

3. Letter of 11/10/1998 at 2–3, Def.'s Mot. for Partial Summ. J., Ex. 2, Attach. B.

4. Letter of 1/28/1999 at 2, Def.'s Mot. for Partial Summ. J., Ex. 3, Attach. 2.

*v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks omitted).

If the moving party meets its burden, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party must show that " 'the evidence is such that a reasonable jury could return a verdict' " in its favor. *Laningham v. United States Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Such evidence must consist of more than mere unsupported allegations or denials and must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322 n. 3, 106 S.Ct. 2548. If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### III. ANALYSIS

Defendant's motion seeks summary judgment for OIP and the Civil Division on the issues of fee waiver and fee category. After reviewing the papers, the court has concluded that there are no genuine issues of material fact. Thus, the court turns to the question whether defendant is entitled to judgment as a matter of law on the issues of fee waiver and fee category. Because a decision for Judicial Watch on the fee-waiver issue would render a decision on the fee-category issue unnecessary, the court will address the former issue first. *See Project on Military Procurement v. Department of Navy*, 710 F.Supp. 362, 368 (D.D.C.1989).

### A. Fee Waiver

#### 1. Standard and Scope of Review

FOIA provides for *de novo* review of fee-waiver decisions, provided that the re-view is "limited to the record before the agency." 5 U.S.C.A. § 552(a)(4)(A)(vii) (West 1996).

#### 2. The Statutory Test and Applicable Regulations

■ To qualify for a fee waiver, a requester must satisfy a two-prong statutory test. The requester must show that "disclosure of the information is [1] in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government and [2] is not primarily in the commercial interest of the requester." 5 U.S.C.A. § 552(a)(4)(A)(iii) (West 1996). The requester bears the burden of showing entitlement to a fee waiver. *See Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir. 1988); *Schrecker v. DOJ*, 970 F.Supp. 49, 50 (D.D.C.1997).

In compliance with its statutory duty, *see* 5 U.S.C.A. § 552(a)(4)(A)(i) (West 1996), DOJ promulgated regulations to guide its components' evaluation of fee-waiver requests. DOJ's regulations require components to employ a four-factor analysis under the public-interest prong of the test and a two-factor analysis under the commercial-interest prong.

#### a. The Public–Interest Prong of the Fee–Waiver Test

#### i) Factor one: operations or activities of the government

The first regulatory factor under the public-interest prong of the fee-waiver test requires that the requested information "concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." 28 C.F.R. § 16.11(k)(2)(i) (1999). Requesters "bear[ ] the initial burden of identifying, with reasonable specificity, the public interest to be served." *Fitzgibbon v. Agency for Int'l Dev.*, 724 F.Supp. 1048, 1050 (D.D.C.1989).

■ Judicial Watch has not identified with reasonable specificity how the information requested will serve the public in-

terest. It makes two statements that can be read as relevant to this requirement. First, Judicial Watch states that it is "a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government."[5] Second, Judicial Watch states that "[t]he subject of [its] request is information concerning the operations and activities of the government."[6]

Neither statement establishes with reasonable specificity the link between the information requested and the public interest. The first is nothing more than a general description of Judicial Watch's organizational mission. This description in no way identifies the public interest that would be served through the specific FOIA request at issue in this case. Judicial Watch's second claim amounts to nothing more than a conclusory assertion. Judicial Watch neither explains the connection between the information sought and the government's operations, nor identifies the public interest that disclosure of the information would serve. Under the FOIA and applicable DOJ regulations, a requester must do more to be eligible for a fee waiver than simply assert that its request somehow relates to government operations. *See, e.g., McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir.1987) (finding conclusory statements insufficient to support a fee waiver). The court declines to hold that all a requester need do to meet the first factor of the fee-waiver analysis is state that it is a public interest group dedicated to ferreting out corruption in government and that its request concerns the operations and activities of government.

### ii) Factor two: likely to contribute to public's understanding

■ The second regulatory factor requires that disclosable information "be meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (1999). Judicial Watch's failure to define how the requested records will inform the public about government operations or activities makes it impossible for the court to determine that the information will "be likely to contribute" to the public's understanding of such activities or operations. Judicial Watch offers the bare assertion that the request "is likely to 'contribute significantly' to the public's understanding of the operations of the[ ] government ...."[7] As previously stated, statements unsupported by facts are insufficient to meet the burden placed on fee-waiver requesters. Judicial Watch also states that its past "success ... in uncovering important facts about government activities, integrity and operations," proves that its current request fulfills the second-factor requirement.[8] This argument is unconvincing. Judicial Watch's actions in unrelated cases do not shed light on whether the information Judicial Watch currently requests will likely contribute to public understanding of government operations or activities. As Judge Kotelly succinctly stated in a recent case, "Judicial Watch's past record in uncovering information is simply irrelevant." *Judicial Watch v. United States Dep't of Justice*, No. 99–2315 (D.D.C. Aug. 17, 2000). Accordingly, the court finds that Judicial Watch has failed to establish that its request will "be meaningfully informative about government operations or activities" in order to be 'likely to contribute' to an "increased public understanding of those operations or activities." 28 C.F.R. § 16.11(k)(2)(ii).

### iii) Factor three: increase public understanding

■ The third factor under the public-interest prong requires components to de-

---

5. Letter of 10/28/1998 at 3.

6. *Id.* at 4.

7. Letter of 10/28/1998 at 4.

8. Letter of 10/28/1998 at 4.

termine whether disclosure of the requested information will "contribute to the understanding of a reasonably broad audience of persons interested in the subject." 28 C.F.R. § 16.11(k)(2)(iii) (1999). Specifically, components must evaluate the requester's ability to understand and disseminate the information.[9]

In its request letter, Judicial Watch argues that the various methods it employs to disseminate information demonstrate its ability to contribute to the public understanding of government activities or operations. Judicial Watch states that it disseminates information by 1) allowing reporters to inspect its documents; 2) producing "several press releases per week which are 'blast faxed'" to newspapers, radio stations, and television stations; 3) posting "press releases, responsive documents, deposition transcripts, and court opinions" on its website; and 4) appearing on radio and television programs.[10]

Judicial Watch's statements are insufficient to justify a fee waiver. In *Landmark Legal Foundation v. Internal Revenue Service*, No. 97–1474 (D.D.C. Sept.22, 1998), this court found that the plaintiff had "credibly declare[d] its intention to 'author op-ed articles and submit them for publication to major news organizations.'" *Landmark*, slip op. at 9 (citation omitted). Landmark had submitted previously published articles from *The Washington Times* and *The Wall Street Journal* regarding the very subject of its request. *Id.* These articles, this court ruled, had "firmly establish[ed] Landmark's professional contacts with major newspaper companies" and lent support to its statement that it intended to disseminate the requested information. *Id.* In contrast, Judicial Watch fails to identify any plan for a book, report, or newspaper article for which it will use the requested informa-

tion. In its appeal letter on January 11, 1999, Judicial Watch stated that it had previously published a book and a 145 page report titled "Interim Report on Crimes and Other Offenses Committed by President Bill Clinton Warranting His Impeachment and Removal From Elected Office." The appeal letter also expressed Judicial Watch's intent to publish other such works. Judicial Watch did not, however, express a specific intent to publish or disseminate the information at issue. Because Judicial Watch has not offered any concrete plans to disseminate the requested information, or identified any specific increase in public understanding that would result from such dissemination, it has failed to meet its burden under the third factor. *See Larson*, 843 F.2d at 1483; *see also Judicial Watch v. United States Dep't of Justice*, No. 99–2315 (D.D.C. Aug. 17, 2000).

### iv) Factor four: significant contribution

Under the fourth factor, components consider "[w]hether the disclosure is likely to contribute 'significantly' to public understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(iv) (1999).

Judicial Watch's failure to identify how the requested records will inform the public about a specific government operation or activity makes it impossible to determine that disclosing the requested information will significantly contribute to public understanding of that activity or operation. Judicial Watch asserts that the requested information will "promot[e] confidence in an honest democratic system" by deterring government corruption, and that the "integrity and operations" of the government are of "broad concern to

9. There is a presumption that a representative of the news media satisfies this factor. As discussed below, the court upholds OIP and the Civil Division's decision not to classify

Judicial Watch as a representative of the news media. *See* discussion *infra* Section III.B.

10. Letter of 10/28/1998 at 3–4.

the public." [11] However, Judicial Watch does not explain how the information at issue will "promote confidence in an honest democratic system." Judicial Watch does not establish a link between public concern with the "integrity and operations" of the government and the information it seeks. In sum, Judicial Watch does not explain how the requested information will enhance the public's understanding of government operations or activities. Thus, the court concludes that Judicial Watch has failed to establish that disclosure of the requested information "is likely to contribute 'significantly' to public understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(iv).

### b. The Commercial Interest Prong of the Fee–Waiver Test

The second prong of the statutory fee-waiver test requires that the requested information "is not primarily in the commercial interest of the requester." 5 U.S.C.A. § 552(a)(4)(A)(iii) (West 1996). As the court has found that Judicial Watch has failed to satisfy the public-interest prong of the two-prong statutory fee-waiver test, the court need not examine whether the requested information would primarily serve Judicial Watch's commercial interest. Assuming, arguendo, that the requested information would not primarily serve Judicial Watch's commercial interest, the court concludes that DOJ is entitled to summary judgment on the fee-waiver issue.[12]

### B. Fee Category

#### 1. Standard and Scope of Review

■ The standard of judicial review of administrative decisions regarding fee category is not as well-settled as the standard of review of administrative decisions regarding fee waiver. Before 1986, courts reviewed agencies' fee-waiver and fee-cate-

gory issues under the arbitrary and capricious standard. *See Rozet v. Department of Hous. and Urban Dev.*, 59 F.Supp.2d 55, 56 n. 2 (D.D.C.1999). In 1986, Congress enacted the Freedom of Information Reform Act of 1986 (FOIRA), which amended FOIA's fee-waiver provision. *See Fitzgibbon*, 724 F.Supp. at 1050 n. 8; *National Sec. Archive v. United States Dep't of Defense*, 880 F.2d 1381, 1382–1383 (D.C.Cir. 1989). Courts have explicitly declined to decide whether the 1986 amendment, which provided for *de novo* review of fee-waiver decisions, also altered the standard of review for fee-category decisions. *See National Sec. Archive*, 880 F.2d at 1383; *Rozet*, 59 F.Supp.2d at 56–57.

The issue, however, is not a difficult one. It is a well-established principle of statutory construction that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997) (citations and quotation marks omitted); *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *National Rifle Ass'n of America v. Reno*, 216 F.3d 122, 130 (D.C.Cir.2000). Because FOIRA only changed the standard of review for fee-waiver decisions, this court presumes that Congress retained the arbitrary and capricious standard of review for fee-category decisions. *Cf. Immigration and Naturalization Service v. Cardoza–Fonseca*, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) ("The different emphasis of the two standards which is so clear on the face of the statute is significantly highlighted by the fact that the same Congress simultaneously drafted § 208(a) and amended § 243(h). In doing so, Congress chose to maintain the old

---

11. Letter of 10/28/1998 at 4.

12. The court notes that Judge Kotelly recently found virtually identical arguments in favor of

fee waiver unconvincing. *See Judicial Watch v. United States Dep't of Justice*, No. 99–2315 (D.D.C. Aug. 17, 2000).

standard in § 243(h), but to incorporate a different standard in § 208(a).").

FOIRA's legislative history confirms that *de novo* review applies only to review of fee-waiver decisions. Senator Hatch, a co-sponsor of the 1986 amendment, emphasized that "denovo [sic] review is to apply only to the waiver provisions of this section. . . . It does not apply to reductions of fees requested under the standards of [5 U.S.C.A. § 552(a)(4)(A)(iii) ]. These reduction issues will continue to be reviewed under the arbitrary and capricious standard." 132 Cong. Rec. 26,771 (1986). Consequently, the court reviews DOJ's decision on fee category under the arbitrary and capricious standard.

■ As with fee waiver, the court's review is limited to the administrative record. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *IMS, P.C. v. Alvarez,* 129 F.3d 618, 623 (D.C.Cir.1997) ("It is a widely accepted principle of administrative law that the courts base their review of an agency's actions on the materials that were before the agency at the time its decision was made.").

### 2. The Agency's Decision

■ DOJ components OIP and Civil Division rejected Judicial Watch's claim that it should be categorized as a representative of the news media. DOJ regulations define a "representative of the news media" as "any person actively gathering news for an *entity that is organized and operated* to publish or broadcast news to the public." 28 C.F.R. § 16.11(b)(6) (1999) (emphasis added). The Court of Appeals for this Circuit has defined a representa-

tive of the news media as "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Sec. Archive,* 880 F.2d at 1387.

To support its contention that it is a representative of the news media, Judicial Watch initially pointed to four methods it employs to disseminate information: 1) it allows reporters to inspect its documents; 2) it produces "several press releases per week which are 'blast faxed' to hundreds of radio and television stations and newspapers around the country"; 3) it posts "press releases, responsive documents, deposition transcripts, and court opinions" on its website; and 4) it appears on national radio and television programs.[13] In its appeal letters, Judicial Watch further stated that it had published a book and had "expressed its intent to publish others."[14] Specifically, Judicial Watch referred to a 145–page report that it had released advocating President Clinton's impeachment.[15]

The court upholds DOJ's refusal to categorize Judicial Watch as a news-media representative because DOJ's decision was not arbitrary or capricious. First, most of Judicial Watch's methods of "disseminating" information merely make information available to the public; these methods do not establish that Judicial Watch is a representative of the news media. *See National Sec. Archive,* 880 F.2d at 1386. Second, unlike the Judicial Watch in *National Security Archive,* Judicial Watch did not establish a "firm intention . . . to publish" the information requested. 880 F.2d at 1386. Judicial Watch did not identify an article, report, or book for which it planned to use the requested information. Third, by its own admission, Judicial Watch is not "an entity that is organized and operated to publish or broadcast news," 28 C.F.R. § 16.11(b)(6) (1999), but

---

**13.** Letter of 10/28/1998 at 3–4.

**14.** Letter of 1/11/1999 at 3; Letter of 3/29/1999 at 2.

**15.** Letter of 1/11/1999 at 3; Letter of 3/29/1999 at 3.

is rather "a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a *public interest law firm* specializes in deterring, monitoring, uncovering, and addressing public corruption in government." [16] *Cf. Tax Analysts v. United States Dep't of Justice*, 965 F.2d 1092, 1095 (D.C.Cir.1992) (granting status as a news-media representative because "Tax Analysts ... is in the business of disseminating information"). Because Judicial Watch failed to establish a firm intent to disseminate, rather than merely make available, the requested information, and because Judicial Watch is not "organized and operated to publish or broadcast news," 28 C.F.R. § 16.11(b)(6), DOJ's decision not to categorize Judicial Watch as a representative of the news media was not arbitrary or capricious.[17] Therefore, the court affirms the agency's decision.

## IV. CONCLUSION

For the foregoing reasons, it is this 7th day of September, 2000, hereby

**ORDERED** that DOJ's motion for partial summary judgment regarding the fee-waiver and fee-category issues is **GRANTED.**

---

**16.** Letter of 10/28/1998 at 3 (emphasis added).

**17.** This court's conclusion is bolstered by Judge Kotelly's recent decision to reject Judicial Watch's virtually identical claim in *Judicial Watch v. United States Dep't of Justice*, No. 99–2315 (D.D.C. Aug. 17, 2000).