**JUDICIAL WATCH, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**No. Civ.A. 99–1234(PLF).**

United States District Court, District of Columbia.

Jan. 14, 2002.

Larry Elliot Klayman, Judicial Watch, Inc., Washington, DC, for plaintiff.

Marina Utgoff Braswell, U.S. Attorney's Office, Washington, DC, for defendant.

## OPINION

PAUL L. FRIEDMAN, District Judge.

Plaintiff Judicial Watch, Inc. filed suit pursuant to the Freedom of Information Act, 5 U.S.C. § 552, seeking information regarding the trade missions of the United States Department of Commerce from 1993 to 1998. Defendant has filed a motion for partial summary judgment, contending that before it continues to search for records responsive to plaintiff's request, plaintiff must indicate its willingness to pay fees or to authorize a particular amount of fees it is willing to pay. Plaintiff argues that it is entitled to a fee waiver either because the disclosure of information it requested is in the public interest or because Judicial Watch is a "representative of the news media." Judicial Watch also argues that the search conducted by defendant was inadequate.

Upon consideration of the arguments presented by the parties, the Court grants defendant's motion for partial summary judgment in part and denies it in part. It denies plaintiff's cross-motion for partial summary judgment.

## I. BACKGROUND

By its own account, Judicial Watch is a "non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government." Complaint ¶ 5 and Exhibit ("Ex.") 1, October 19, 1998, Letter from Larry Klayman, Judicial Watch, to Margaret A. Irving, Department of Justice ("Oct. 19 Letter") at 3. In its FOIA request, plaintiff requested that defendant release all documents relat-

ing to "United States Department of Commerce trade missions from January 1993 to [October 1998] and the decision of the Attorney General to not appoint an independent counsel to investigate the alleged sale of seats on said trade missions by the Clinton Administration and/or the Democratic National Committee." Complaint ¶ 5; Oct. 19 Letter at 1. Plaintiff also requested a fee waiver as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II) and/or because the disclosure of the documents would in the public interest under 5 U.S.C. § 552(a)(4)(A). *See id.* ¶¶ 7–9, 11; Oct. 19 Letter at 2–4.

In a letter dated November 10, 1998, the Justice Department informed plaintiff that the request for a fee waiver had been denied on both grounds. *See* Complaint ¶¶ 7, 8, Ex. 2, November 10, 1998, Letter from Charlene Wright Thomas, Department of Justice, to Larry Klayman ("Nov. 10 Letter") at 1–3. Defendant explained that Judicial Watch would be categorized as an "other" requester and therefore entitled to only two hours of search time and 100 pages of records free of any search or duplication charge under 28 C.F.R. § 16.11(d). *See* Nov. 10 Letter at 2–3. Defendant also explained that it had searched for responsive documents for two hours and intended to produce those documents responsive to plaintiff's request; before defendant conducted any further searches, however, plaintiff would need to indicate its willingness to pay the normal search and duplication fees. *See id.* Plaintiff administratively appealed the denial of its request for a fee waiver. *See* Complaint ¶ 9, Ex. 3, January 11, 1999, Letter from Larry Klayman to the Office of Information and Privacy, Department of Justice ("Jan. 11 Letter") at 2–4.

The Office of Information and Privacy ("OIP") denied plaintiff's appeal, conclud-ing that plaintiff's application for a fee waiver or fee reduction had been properly denied. *See* Complaint ¶ 10, Ex. 4, February 19, 1999, Letter from Richard L. Huff, Department of Justice, to Larry Klayman ("Feb. 19 Letter") at 1. Plaintiff also appealed to the OIP on the grounds that the search conducted was inadequate; the OIP denied plaintiff's appeal on that ground as well. *See* Complaint ¶¶ 13–25, Exs. 5–12.

## II. DISCUSSION

### A. *Fee Waiver: Representative of the News Media*

The Freedom of Information Act provides that each agency of the federal government shall promulgate regulations specifying a schedule of reasonable fees for document searches, duplication and review to be charged to FOIA requesters. *See* 5 U.S.C. § 552(a)(4)(A). It directs that the regulations also shall include procedures and guidelines for determining when such fees should be waived or reduced. *See* 5 U.S.C. § 552(a)(4)(A)(i). The agency's regulations should establish that the fees are "limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media." 5 U.S.C. § 552(a)(4)(A)(ii)(II). The Department of Justice has promulgated regulations that define "representative of the news media" as "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public." 28 C.F.R. § 16.11(b)(6). The D.C. Circuit has further defined a representative of the news media as "a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *National Security Archive v. United*

*States Dep't of Defense*, 880 F.2d 1381, 1387 (D.C.Cir.1989).

There is some disagreement as to the correct standard a court is to apply in considering a government agency's denial of a plaintiff's request for representative of the media status. Many of the judges of this Court have concluded that 5 U.S.C. § 552(a)(4)(A)(vii) is applicable in this situation and, based on the express language of that section, therefore have conducted a *de novo* determination limited to the record before the agency. *See Judicial Watch, Inc. v. United States Dep't of Justice*, Civil Action No. 99–2315, slip op. at 4–5 (D.D.C. Aug. 17, 2000) (Kollar–Kotelly, J.); *Judicial Watch, Inc. v. United States Dep't of Justice*, 133 F.Supp.2d 52, 53 (D.D.C.2000) (Robertson, J.); *Judicial Watch v. United States Dep't of Justice*, Civil Action No. 97–2869, slip op. at 2 (D.D.C. Aug. 25, 1998) (Urbina, J.). Judge Kennedy, however, has concluded that Section 552(a)(4)(A)(vii) is not applicable when determining whether the agency properly categorized the requester as a representative of the news media and that the more deferential arbitrary and capricious standard applies. *See Judicial Watch II*, 122 F.Supp.2d 5, 11–12 (D.D.C. 2000). This Court will determine *de novo* whether plaintiff is entitled to be classified as a representative of the news media based on the record before the agency.[1]

Plaintiff represents that when it obtains documents through FOIA requests, "it al-lows reporters into its offices to inspect the documents" and that these reporters may write stories based on the information reviewed. Oct. 19, Letter at 3. It also states that it disseminates information by posting electronic copies of the documents received through its FOIA requests on Judicial Watch's website and by preparing press releases that are "blast faxed" to radio and television stations and to newspapers across the country. *Id.* Finally, it points to the fact that representatives of Judicial Watch, including Larry Klayman, "frequently appear on nationally broadcast radio and television programs." *Id.* at 4.

▪▪▪ Judicial Watch does not characterize itself as an entity engaged in the broadcast and publication of news but rather as a non-profit public interest law firm specializing in "deterring, monitoring, uncovering and addressing public corruption in government." Complaint, Ex. 1 at 3; *see also Judicial Watch III*, slip op. at 6. From plaintiff's own characterization of its activities, the Court concludes that plaintiff is at best a type of middleman or vendor of information that representatives of the news media can utilize when appropriate. This relationship with the news media, however, does not make Judicial Watch a representative of the news media or entitle it to be considered as such for the purposes of a fee waiver under the FOIA. As the D.C. Circuit has made plain, when a party acts as a private library,

---

1. In cases similar to this one, two judges of this Court have denied Judicial Watch's application for a fee waiver or reduction. *See Judicial Watch, Inc. v. United States Dep't of Justice*, 122 F.Supp.2d 13 (D.D.C.2000) (*"Judicial Watch I"*) (Kennedy, J.); *Judicial Watch, Inc. v. United States Dep't of Justice*, 122 F.Supp.2d 5 (D.D.C.2000) (*"Judicial Watch II"*) (Kennedy, J.); *Judicial Watch, Inc. v. United States Dep't of Justice*, Civil Action No. 99–2315, slip op. at 6 (D.D.C. Aug. 17, 2000) (*"Judicial Watch III"*) (Kollar–Ko-telly, J.). A third granted Judicial Watch's request for a fee waiver as a representative of the news media but denied a blanket public interest waiver. *See Judicial Watch, Inc. v. United States Dep't of Justice*, 133 F.Supp.2d 52 (D.D.C.2000) (*"Judicial Watch IV"*) (Robertson, J.). A fourth granted Judicial Watch's request for a blanket public interest fee waiver. *See Judicial Watch v. United States Dep't of Justice*, Civil Action No. 97–2869, slip op. at 1–6 (D.D.C. Aug. 25, 1998) (*"Judicial Watch V"*) (Urbina, J.).

information vendor or middleman, the party does not qualify as a "representative of the news media" for purposes of the FOIA. *See National Security Archive v. United States Dep't of Defense*, 880 F.2d at 1386–87. "Merely making available information to the public does not transform a requester into a representative of the news media." *Judicial Watch I*, 122 F.Supp.2d at 20 (citing *National Security Archive v. United States Dep't of Defense*, 880 F.2d at 1386); *but see Judicial Watch IV*, 133 F.Supp.2d at 53–54. To be considered a representative of the news media, a requester must establish that it has "a firm intent to disseminate, rather than merely make available, the requested information." *Judicial Watch II*, 122 F.Supp.2d at 13; *see Judicial Watch I*, 122 F.Supp.2d at 20–21. This Court therefore concludes that Judicial Watch should not be classified as a representative of the news media for purposes of a fee waiver under the FOIA.

### B. Fee Waiver: Public Interest

 The FOIA also provides:

Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) [5 U.S.C. § 552(a)(4)(A)(ii) ] if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii). Thus, in considering a public interest fee waiver request, the Court must determine whether the disclosure of the responsive documents is (1) in the public interest, and (2) not primarily in the requester's commercial interest. The party requesting documents under the FOIA bears the burden of showing that these requirements are met. *See*

*Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988). Furthermore, requests for public interest fee waivers must be reasonably detailed and specific; they are evaluated on a case-by-case basis. *See id.* Conclusory statements that the disclosure of the requested documents will serve the public interest are not sufficient to meet this burden. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285 (9th Cir.1987). The Court decides *de novo* whether to grant plaintiff's request for a public interest waiver, but the Court's consideration of the matter is limited to the record before the agency. *See* 5 U.S.C. § 552(a)(4)(A)(vii); *see also Larson v. CIA*, 843 F.2d at 1483; *Judicial Watch I*, 122 F.Supp.2d at 16.

With respect to the public interest prong, the Department of Justice has promulgated a regulation setting out four factors used to determine whether a party making a FOIA request is entitled to a public interest fee waiver. *See* 28 C.F.R. § 16.11(k)(2)(i)–(iv). Those factors are:

1. The subject of the request: Whether the subject of the requested records concerns "the operations or activities of the government."

2. The informative value of the information to be disclosed: Whether the disclosure is "likely to contribute" to an understanding of government operations or activities.

3. The contribution to an understanding of the subject by the public likely to result from disclosure: Whether disclosure of the requested information will contribute to "public understanding."

4. The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.

1. Subject of the Request: Operations or Activities of Government

█ The first factor requires that "the subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated." 28 C.F.R. § 16.11(k)(2)(i). Under this factor, the requesting party bears the burden of "identifying, with reasonable specificity, the public interest to be served." *Fitzgibbon v. Agency for Int'l Dev.*, 724 F.Supp. 1048, 1050 (D.D.C.1989); *see also Judicial Watch I*, 122 F.Supp.2d at 17.

█ Plaintiff states in general terms that it will use the information sought (1) "to promote accountable government," (2) for the public's benefit "by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny," and (3) "for promoting confidence in an honest democratic system, and furthering the integrity of the American national government by deterring and/or sanctioning corrupt activities." It also states that the failure to disclose the information "will result in the further compromise of important interests of the American people." Oct. 19, 1998, Letter at 3–4. At best, plaintiff's assertions merely restate Judicial Watch's organizational mission and thus could be invoked by Judicial Watch any time it seeks a public interest fee waiver for any of its FOIA requests. *See Judicial Watch I*, 122 F.Supp.2d at 17; *Judicial Watch II*, 122 F.Supp.2d at 8–9; *Judicial Watch III*, slip op. at 8–10; *Judicial Watch IV*, 133 F.Supp.2d at 54. Under the FOIA and the applicable regulation, "a requester seeking a fee waiver must do more than simply assert that its request somehow relates to government operations." *Judicial Watch I*, 122 F.Supp2d at 17. In order to obtain a fee waiver, the requesting party has the burden of explaining with reasonable specificity how and why the disclosure of this particular information will serve the public interest and not how it believes that, as an organization, it furthers the public interest more generally. The Court concludes that plaintiff has failed to meet this burden.

2. Informative Value of Information to be Disclosed

The requested information must be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 28 C.F.R. § 16.11(k)(2)(ii). Plaintiff asserts that its request is "likely to contribute significantly to public understanding of the activities of the Justice Department, the Democratic National Committee and the Clinton Administration." Jan. 11 Letter at 3. Once again, plaintiff fails to provide details specific to this FOIA request indicating how the information sought will contribute to an increased public understanding of government operations or activities. Plaintiff contends that its "past experience ... demonstrates the success of Judicial Watch in uncovering important facts about government activities, integrity and operations. . . ." Oct. 19 Letter at 4. But, as both Judge Kollar–Kotelly and Judge Kennedy have stated, "Judicial Watch's past record in uncovering information is simply irrelevant." *Judicial Watch III*, Civil Action No. 99–2315, slip op. at 9 (D.D.C. Aug. 17, 2000); *see Judicial Watch II*, 122 F.Supp.2d at 9. Moreover, such statements must be supported by facts in order to satisfy the burden placed on the requester of a fee waiver. *See Judicial Watch I*, 122 F.Supp.2d at 18. Judicial Watch has not met the second part of the public interest prong of the public interest fee waiver test.

### 3. Contribution to Public Understanding of the Subject Likely to Result from Disclosure

The party seeking a fee waiver next must show that the disclosure of the requested information will "contribute to the public understanding" of "a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 28 C.F.R. § 16.11(k)(2)(iii). In assessing this factor, a court must consider the requester's "ability and intention to effectively convey" or disseminate the requested information to the public. *Id; see Judicial Watch I,* 122 F.Supp.2d at 18.

Plaintiff states that it has several mechanisms for disseminating information, including allowing reporters to inspect its documents, "blast faxing" press releases, maintaining a website and appearing on radio and television programs. *See* Oct. 19, Letter at 3. It also states that it intends to use these mechanisms to make the information obtained through this FOIA request available to the public. *See id.* The Court concludes that this explanation of how Judicial Watch typically disseminates information and its intent to do so in this case is sufficient to satisfy this prong for purposes of a public interest fee waiver. Although the plaintiff has not gone into great detail about how it plans to disseminate the particular information obtained through this FOIA request. Judicial Watch has described several methods it uses to make information available to the public, it has a record of conveying to the public information obtained through FOIA requests, and it has stated its intent to do so in this case. The Court therefore concludes that plaintiff has met its burden under the third factor.

### 4. Significance of Contribution to Public Understanding of Government Operations or Activities

Finally, the Court must consider whether "the disclosure is likely to contribute 'significantly' to the public understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(iv). The public's understanding of the subject, "as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent." *Id.* Plaintiff argues that the information sought "is likely to contribute significantly to public understanding of the activities of the Justice Department, the Democratic National Committee and the Clinton Administration." Jan. 11 Letter at 3. It further states that the requested information will "promot[e] confidence in an honest democratic system" and further "the integrity of the American national government." Oct. 19 Letter at 4. As with the first two factors, however, plaintiff makes only conclusory statements about how the public's understanding will be furthered but does not describe with any specificity how the disclosure of these particular documents will "enhance" public understanding "to a significant extent."

Plaintiff has failed to meet its burden with respect to three of the four factors in the public interest prong of the fee waiver test, and the Court therefore concludes that plaintiff has not satisfied its burden of showing that the release of the requested documents will serve the public interest and therefore cannot qualify for a fee waiver. The Court therefore grants defendant's motion for partial summary judgment and denies plaintiff's cross-motion for summary judgment on this issue.[2]

---

**2.** Because the Court has concluded that plaintiff has not satisfied the requirements of the public interest prong of the public interest fee waiver test, the Court need not decide whether the requested information is "primarily in

### C. The Adequacy of DOJ's Search

#### 1. The Legal Standards

 Before it can obtain summary judgment in a FOIA case, an agency "must show, viewing the facts in the light most favorable to the requester, that ... [it] 'has conducted a search reasonably calculated to uncover all relevant documents.'" *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C.Cir.1994) (quoting *Weisberg v. United States Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984)). In determining the adequacy of a FOIA search, the Court is guided by principles of reasonableness. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990); *Int'l Trade Overseas, Inc. v. Agency for Int'l Development*, 688 F.Supp. 33, 36 (D.D.C.1988). While there is no requirement that an agency search every record system, *Truitt v. United States Dep't of State*, 897 F.2d 540, 542 (D.D.C.1990), or that a search be perfect, *Meeropol v. Meese*, 790 F.2d 942, 955–56 (D.C.Cir.1986), the search must be conducted in good faith using methods that are likely to produce the information requested if it exists. *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 27 (D.C.Cir.1998).

 The Court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826–

28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Agency affidavits or declarations must be "relatively detailed and non-conclusory...." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Services, Inc. v. SEC*, 926 F.2d at 1200. While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block*, 684 F.2d 121, 127 (D.C.Cir.1982), they must "describe what records were searched, by whom, and through what processes," *Steinberg v. United States Dep't of Justice*, 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1350–51 (D.C.Cir.1983); *see Campbell v. United States Dep't of Justice*, 164 F.3d at 27.

#### 2. Plaintiff's Arguments

Judicial Watch first argues that the search conducted in this case was inadequate because defendant improperly denied plaintiff a fee waiver based on the public interest exception and/or the exception for representatives of the news media. The Court already has denied Judicial Watch's request for a fee waiver. Thus, to the extent that any search conducted by defendant was limited to two hours, such a search was necessarily adequate—at least until plaintiff pays or expresses its willingness and intent to pay a reasonable fee. *See* Defendant's Motion for Partial Sum-

the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

mary Judgment ("Def's Mot."), Declaration of Melanie Ann Pustay ("Pustay Decl.") ¶¶ 9, 13 & Exs. F & J.[3]

Based on the information provided by defendant in its declarations, plaintiff also contends that the searches were inadequate, or at least that the descriptions provided as to the nature and scope of the searches were so inadequate that the Court has insufficient information on which to consider defendant's motion for partial summary judgement.

 With respect to the search conducted within the Civil Division, the Court rejects plaintiff's argument. Defendant explains that the records maintained in the Civil Division's electronic database are indexed according to party name, case caption or court docket number. *See* Kovakas Decl. ¶ 6. Because plaintiff's request contained none of this information, defendant explains that it was unable to conduct any meaningful search of its records for documents responsive to plaintiff's request. *See id.* The FOIA does not impose an obligation on defendant to conduct searches that are not likely to uncover responsive documents, *see Oglesby v. United States Dep't of the Army*, 920 F.2d at 68, or to generate records in order to respond to a request. *See Yeager v. DEA*, 678 F.2d 315, 321 (D.C.Cir.1982). The Court concludes that defendant's search of the records in the Civil Division was an adequate response to the request made.

 Defendant also conducted searches for responsive records within the Department of the Executive Secretariat, the Office of the Attorney General, and the Office of Legal Counsel. Defendant explains that these searches were updates of

a prior request made by plaintiff on July 15, 1997—a characterization which plaintiff does not dispute. *See* Pustay Decl. ¶¶ 4, 7 & Ex. D. With respect to the search for responsive records within the files of the Office of the Attorney General, the Court concludes that this search was adequate. As explained in the Pustay Declaration, defendant conducted a search that actually resulted in the production of documents to the plaintiff. *See id.* Because the search uncovered responsive documents, the Court is able to conclude that the search conducted was reasonably calculated to uncover such documents. Although defendant did not continue to search for documents after the two hours of free search time had been exhausted, this decision was appropriate because plaintiff has not yet indicated its willingness to pay search and copying fees. *See id.* ¶ 8. The Court concludes that the search of records contained within the Office of the Attorney General was adequate.

 Defendant's search of the electronic database maintained by the Department's Executive Secretariat, which apparently is the official repository for the Attorney General's records, did not uncover any responsive documents. *See* Pustay Decl. ¶¶ 4-5. Defendant, however, provides no description of how the electronic index is organized or how the search was conducted. The Pustay declaration fails to explain whether key words were used and if so which key words were used to search for responsive documents. Without knowing these details regarding defendant's search, the Court cannot determine whether defendant's efforts were "reasonably calculated" to recover the responsive rec-

---

3. With respect to the searches for responsive documents conducted within the Civil Division of the Department of Justice and the Office of Legal Counsel, the searches were not limited to two hours and instead complete

searches were conducted. *See* Def's Mot., Declaration of James M. Kovakas ("Kovakas Decl.") ¶¶ 3, 6-8 & Ex. B (Civil Division); Declaration of Paul P. Colborn ("Colborn Decl.") ¶ 2 (Office of Legal Counsel).

ords. *See Valencia–Lucena v. United States Coast Guard,* 180 F.3d 321, 325 (D.C.Cir.1999). The description of the search of the files of the Office of Legal Counsel is similarly deficient. While defendant at least explains that the Office of Legal Counsel maintains a database with the complete text of documents and that the database is searchable by key words, it fails to explain what key word searches were conducted. *See* Colburn Decl. ¶ 2. Based on the declarations submitted by defendant, the Court is unable to conclude that these searches were adequate and therefore denies defendant's motion for partial summary judgment on this issue.

■ Finally, plaintiff contends that it is entitled to discovery regarding the searches conducted by defendant because the supporting declarations lack the detail necessary to determine exactly how defendant searched for responsive documents. Discovery is not favored in lawsuits under the FOIA. Instead, when an agency's affidavits or declarations are deficient regarding the adequacy of its search, as they are here, the courts generally will request that the agency supplement its supporting declarations. *See Nation Magazine, Washington Bureau v. United States Customs Service,* 71 F.3d 885, 892 (D.C.Cir.1995); *Oglesby v. United States Dep't of the Army,* 920 F.2d at 68. As no reason exists to distinguish this case from the general rule, the Court will not grant plaintiff's request for discovery.

An Order consistent with this Opinion will issue this same day.

SO ORDERED.

### ORDER

Before the Court are defendant's motion for partial summary judgment and plaintiff's cross-motion for partial summary judgment. Upon consideration of the arguments of the parties and the entire record of the case, and for the reasons stated in the Court's Opinion issued this same day, it is hereby

ORDERED that defendant's motion for partial summary judgment is GRANTED in part and DENIED in part without prejudice to its renewal; it is

FURTHER ORDERED that plaintiff's cross-motion for partial summary judgment is DENIED; it is

FURTHER ORDERED that plaintiff's request for discovery is DENIED; it is

FURTHER ORDERED that on or before February 15, 2002, defendant shall file a renewed motion for summary judgment addressed to the adequacy of search issue, with supplemental affidavits or declarations demonstrating the adequacy of its search for records responsive to plaintiff's FOIA request. Plaintiff may respond to any such motion and supplemental affidavits or declarations on or before March 4, 2002.

SO ORDERED.