**D.C. TECHNICAL ASSISTANCE ORGANIZATION, INC., et al., Plaintiffs,**

v.

**U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Defendant.**

**No. Civ.A. 98–0280(JR).**

United States District Court, District of Columbia.

Feb. 24, 2000.

David L. Rose, David M. Wachtel, Rose & Rose, P.C., Washington, DC, for plaintiffs.

Rudolph Contreras, Assistant U.S. Attorney, Washington, DC, for defendant.

### MEMORANDUM

ROBERTSON, District Judge.

The only issue remaining for decision in this FOIA action is whether the Department of Housing and Urban Development ("HUD") properly denied plaintiffs' petitions for fee waivers. Plaintiffs have failed

to demonstrate that release of the documents they seek will contribute to public understanding of the operation of government. Their motion for summary judgment must accordingly be denied. Defendant's cross-motion for summary judgment will be granted.

### BACKGROUND

HUD's Tenant Opportunities Program (TOP) provided funding for projects that would benefit public housing residents. "Technical assistance organizations" were responsible for organizing and administering the "resident councils" that received TOP funds. Plaintiff District of Columbia Technical Assistance Organization (DCTAO) was formed in 1995 to assist twenty-seven resident councils with the administration of nearly $2 million in TOP grants.

DCTAO alleges that, after a June 1996 audit of its operations, HUD placed a temporary freeze on TOP funds and then, after HUD's Office of Inspector General released a favorable audit report and recommended the continuation of TOP funding, began a systematic effort to undercut DCTAO's role as intermediary between HUD and the resident councils. The subtext of this FOIA case is a claim—its asserted public interest component—that HUD officials pressured resident councils by conditioning their continued receipt of TOP funding on the termination of their involvement with DCTAO and that HUD's goal in doing so was the "deliberate destruction of DCTAO." Pl. Motion for Summary Judgment at 7.

*First FOIA Request*

On December 12, 1996, plaintiff Otto Hetzell, DCTAO counsel, filed a FOIA request for all HUD documents concerning TOP and DCTAO (including electronic mail messages) in the HUD Central Office and HUD's D.C. Area Field Office.[1] HUD

---

**1.** Specifically, DCTAO requested "all documents ... regarding the Tenants Opportunity Program created during the period 1992 to

date [December 12, 1996], including any records specifically referring to the D.C. Technical Assistance Program and to Vaughn Taylor,

identified 25 e-mail messages responsive to the request. Plaintiffs were dissatisfied and requested that HUD conduct a search of back-up e-mail tapes relating to six employees for a four-week period. HUD responded that the "retrieval and restore" process required to comply with that request would cost $4896. Citing its inability to pay such a fee, plaintiff requested a waiver of fees for "any future costs in connection with any further record searches that HUD undertakes in connection with this case." Pl.Opp. to Summary Judgment (Exh. 55). HUD denied the request.

*Second FOIA Request*

On July 21, 1998, DCTAO submitted a second FOIA request to HUD seeking documents concerning TOP and DCTAO, including electronic mail messages, for the period December 12, 1996 through July 21, 1998. HUD declined to conduct the search until plaintiffs first paid approximately $3700. DCTAO requested a fee waiver, and HUD never responded (although, in the present posture of this case, it is clear that HUD has refused it).

## STANDARD OF REVIEW

■ The decision of an agency to grant or deny a fee waiver request is reviewed *de novo* looking only to the administrative record before the agency at the time of the decision. 5 U.S.C. § 552(a)(4)(A)(vii) (1998). (The additional supporting documents submitted with plaintiffs' motion for summary judgment were not considered in the disposition of this case.)

## ANALYSIS

■ Plaintiffs argue that the legislative history of the Freedom of Information Act demonstrates that Congress intended for fee waivers to be "liberally granted" to indigents and non-profit organizations to provide these groups with equal access to information concerning government activities. Courts in this jurisdiction have con-

its Executive Director." Deft. Motion for

sistently ruled, however, that indigence alone does not entitle one to a fee waiver, *see Ely v. Postal Serv.,* 753 F.2d 163, 165 (D.C.Cir.1985); *Durham v. Department of Justice,* 829 F.Supp. 428, 435 n. 10 (D.D.C. 1993); *Crooker v. Army,* 577 F.Supp. 1220, 1224 (D.D.C.1984). An entity's status as a non-profit or public interest organization does not relieve it of the burden of meeting the requirements of the statutory test for receiving a fee waiver. *See McClain v. Department of Justice,* 13 F.3d 220, 221 (7th Cir.1993) (nonprofit status alone does not yield free access to facts); *see also Security Archive v. Department of Defense,* 880 F.2d 1381, 1384 (D.C.Cir.1989) (noting elimination from bill of preference for fee waivers).

The Freedom of Information Reform Act of 1986 provides that fees for search, review, or duplication of documents should be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operation or activities of the government and is not primarily in the commercial interest of the requester." Pub.L. No. 99–570, § 1803, 100 Stat. 3207, 3207–50 (codified as amended at 5 U.S.C. § 552(a)(4)(A)(iii) (1994 & Supp. II 1996)).

*Public Interest Requirement*

■ Four factors must be considered in sequence when determining whether a fee waiver request concerns documents that will contribute to a greater public understanding of government activities. The first is whether the subject matter of the requested documents specifically relates to "operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii) (1998). That factor is uncontested in this case.

The second factor is whether the requested documents will be "likely to contribute" to an understanding of specific government activities or operations. To evaluate this factor, fee waiver requests

Summary Judgment at 1–2.

are to be examined in light of the identity and objectives of the requester, *see McClain v. Department of Justice*, 13 F.3d 220, 220–21 (7th Cir.1993); the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons—*see Carney*, 19 F.3d at 815; *Crooker*, 577 F.Supp. at 1224; and the requester's capacity to disseminate the requested information, *see McClain*, 13 F.3d at 221. Plaintiffs have shown that their objective is to reveal why HUD encouraged the creation of technical assistance organizations in 1995 and then in 1996 took action that "all but destroyed DCTAO and other technical assistance organizations throughout the country," letter from David Wachtel to William Barth 2 (Sept. 18, 1998); that they would disseminate such information to the various DCTAO-administered resident councils, which in turn would distribute it to residents in their respective communities; and that Vaughn Taylor, DCTAO's executive director, has a demonstrated ability to disseminate information on behalf of DCTAO. In this Information Age, technology has made it possible for almost anyone to fulfill this requirement. These showings satisfy plaintiffs' burden with respect to the second public interest factor.

The third and fourth factors for evaluating the public interest component of a fee waiver request—whether the disclosure will contribute to a greater understanding on the part of the public at large, and whether disclosure of the requested documents will contribute "significantly" to the public's understanding of government activities or operations—must be resolved *against* the plaintiffs. Although plaintiffs assert that the public at large would benefit from the information they seek, they have failed to make a colorable showing that their claim of HUD's bad faith effort to destroy DCTAO has any basis in reality, or that the information they seek "will give DCTAO and its thousands of constituents greater understanding of why HUD withdrew funding and will help them, and other [sic] like them, keep their programs

funded in the future," letter from David Wachtel to William Barth 3 (Sept. 18, 1998). *See Larson v. Central Intelligence Agency*, 843 F.2d 1481, 1483 (D.C.Cir. 1988); *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C.Cir. 1987).

Plaintiffs' failure to sustain their burden of establishing the third and fourth factors of the "public understanding" requirement for a fee waiver is fatal to their claim.

### *ORDER*

Upon a review of the entire record, for the reasons stated in the accompanying memorandum, it is this 23d day of February 2000

**ORDERED** that plaintiffs' motion for summary judgment [# 68] is **DENIED**. And it is

**FURTHER ORDERED** that defendant's cross-motion for summary judgment [# 65] is **GRANTED**.