**VOTEHEMP, INC., Plaintiff,**

v.

**DRUG ENFORCEMENT ADMINISTRATION and Asa Hutchinson, Defendants.**

**No. CIV.A. 02–0985(RBW).**

United States District Court, District of Columbia.

Dec. 23, 2002.

Joseph Eric Sandler, Sandler, Reiff & Young, PC, Washington, DC, for Plaintiff.

Jonathan Brian New, U.S. Department of Justice Civil Division, Federal Programs Branch, Washington, DC, Anne L. Weismann, U.S. Department of Justice, Civil Division, Elizabeth Jane Shapiro, U.S. Department of Justice, Civil Division, Federal Programs Branch, Washington, DC, for Defendants.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendants' Cross Motion for Partial Summary Judgment. The issue presented through the motions is whether or not defendant has erroneously denied plaintiff's request for a fee waiver regarding plaintiff's Freedom of Information Act ("FOIA") request. For the reasons that follow, the Court concludes that the defendant did not err in its determination that plaintiff is not entitled to a fee waiver and accordingly the Court grants the Defendants' Cross Motion for Summary Judgment.

### I. Background

Plaintiff, VoteHemp, is a nonprofit corporation that advocates for the use of and a free market for industrial hemp.[1] Plain-

---

1. According to plaintiff, industrial hemp "is a non-psychoactive ... variet[y] of the cannabis sativa plant. Currently, it is illegal for U.S. farmers to grow Industrial Hemp because it is

tiff's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment ("Pl.'s Mem."), Declaration of Eric Steenstra, President of VoteHemp, Inc., ("Steenstra Decl."), Exhibit ("Ex.") 1, selected pages from VoteHemp's website. VoteHemp "seeks to educate the American public about the uses and value of industrial hemp, and about public policy issues relating to the regulation of industrial hemp." Pl.'s Mem. at 3. In furtherance of its goals, VoteHemp operates a website, prepares and distributes press advisories about news and developments regarding industrial hemp and hemp policy, and "provides a free 'Action Alert Email List' which sends regular news and updates to thousands of subscribers ..." *Id.*

On September 21, 2001, VoteHemp requested from the defendant, the Drug Enforcement Administration ("DEA"), all documents relating to hemp policy, including "[a]ll written correspondence, including meeting notes, from DEA interagency meetings ..." pursuant to the FOIA, 5 U.S.C. § 552 (2000). Steenstra Decl. Ex. 2, Freedom of Information Act Request dated September 21, 2001. In its request, VoteHemp's counsel indicated that although the organization was willing to pay fees totaling a maximum of $100, it sought a fee waiver of all additional fees. *Id.* In support of this request, VoteHemp's counsel stated:

> Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and is not in [the requestor's] or another's commercial or business interests.

Vote Hemp is a 501(c)(4) tax-exempt educational group that seeks to help the American public better understand industrial hemp policy and policy options. Vote Hemp prepares and distributes a weekly press advisory on current developments and news regarding industrial hemp, policy, and enforcement.

*Id.*

On January 8, 2002, the defendant sent a letter to VoteHemp's counsel in response to plaintiff's request indicating that five pages of material had been located but were being withheld pursuant to FOIA exemptions (b)(5) and (b)(7)(E). Steenstra Decl. Ex. 3, Letter from DEA dated January 8, 2002. VoteHemp administratively appealed this initial determination on January 28, 2002, and, after receiving no response to this appeal, filed the instant complaint on May 21, 2002. Pl.'s Mem. at 6. After filing its complaint, plaintiff received a response from the Department of Justice's ("DOJ") Office of Information and Privacy ("OIP") stating that the DEA had decided to "reopen" VoteHemp's request. Steenstra Decl. Ex. 5, Letter from DOJ dated May 15, 2002. Several days later, plaintiff received a letter from the DEA's Freedom of Information Section stating that plaintiff's request "failed to reasonably describe the records sought ..." and denying plaintiff's request for a fee waiver based on the fact that plaintiff was a "commercial use requester" and disclosure was "not likely to contribute significantly to public understanding of the operations or activities of the government ..." *Id.* Ex. 6, Letter from DEA dated May 21, 2002.[2] Votehemp administratively

---

improperly classified as a 'drug' under the Controlled Substances Act." Plaintiff's Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment ("Pl.'s Mem."), Declaration of Eric Steenstra,

President of VoteHemp, Inc., Exhibit ("Ex.") 1, Selected Pages from VoteHemp's website.

**2.** In its letter, the DEA also determined that VoteHemp could not be "afforded status as an educational institution and/or member of the

appealed this decision on July 22, 2002, and the decision was affirmed in a letter from the DOJ's OIP on September 27, 2002. *Id.* Ex. 8, Letter from DOJ dated September 27, 2002. Then on October 2, 2001, the DEA issued an "Interpretive Rule" which provides that the DEA "interprets the Controlled Substances Act ["CSA"] ... and DEA regulations to declare any product that contains any amount of tetrahydrocannabinois (THC) to be a schedule I controlled substance, even if such product is made from portions of the cannabis plant that are excluded from the CSA definition of 'marihuana.'" 66 Fed.Reg. 51,530 (Oct. 9, 2001).[3] After agreeing to limit its request to documents pertaining to "DEA's promulgation of the 'Interpretive,' 'Proposed' and 'Interim' regulations,"[4] Pl.'s Mem. at 7, a DOJ lawyer informed VoteHemp that the DEA "had identified 32,000 pages of documents 'that can reasonably be expected to contain documents responsive to plaintiff's reformulated request.'" *Id.* (quoting Joint Meet and Confer Statement at 3). The DEA also indicated that the search and duplication fees for the large volume of documents could exceed $75,000. *Id.*[5]

## II. Analysis

■ Normally, a person requesting documents pursuant to the FOIA must pay the reasonable costs pertaining to the search, review and duplication of the records sought. 5 U.S.C. § 552(4)(A)(ii)(I). Disclosure of the information shall be made without cost to the requestor only where it is determined that "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(4)(A)(iii). To aid its determination of whether to grant requests for fee waivers, the DOJ has promulgated regulations found at 28 C.F.R. § 16.11(k), which provide guidance for determining whether factors designated in the regulations have been satisfied. In reviewing an agency's denial of a request for a fee waiver, the Court must decide the issue de novo; however, its review "shall be limited to the record [that was] before the agency." 5 U.S.C. § 552(4)(A)(vii).

■ A two-prong analysis is required in determining whether VoteHemp is entitled to a fee waiver. This analysis requires the Court to assess whether "the disclosure of the information is 'likely to contribute significantly to public understanding of the operations or activities of the government[,]'" and whether VoteHemp does "not have a commercial interest

---

news media ..." Steenstra Decl. Ex. 6. VoteHemp has not appealed this portion of the defendants' decision.

3. Plaintiff argues that the rule has the effect "of instantly transforming, into a criminal offense, the longstanding and previously legal manufacture, sale, importation and consumption of edible hemp seed and oil ..." Pl.'s Mem. at 4.

4. VoteHemp agreed to narrow its request in August when the parties met to discuss ways to narrow the issues involved in this lawsuit. Pl.'s Mem. at 7.

5. Currently there is litigation pending in the Ninth Circuit that was filed by "[a] group of hemp foods companies, led by the ... Hemp Industries Association" seeking review of the DEA's "Interpretive Rule." Pl.'s Mem. at 5. The plaintiffs in that case also filed a motion to stay enforcement of the rule pending the review those plaintiffs are seeking. *Id.* The basis for the petition in that matter is that the "DEA's criminalization of edible seed and oil products without notice or opportunity for comment ... is a violation of the Administrative Procedure Act and the [Controlled Substances Act]." *Id.* VoteHemp is not a party to the petition for that review. *Id.*

in the disclosure of the information sought." 5 U.S.C. § 552(4)(A)(iii); *Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988) (citations omitted); *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th Cir.1987). As the requester, plaintiff has the burden of demonstrating that these two requirements are satisfied. *Larson*, 843 F.2d at 1483 (citations omitted); *Judicial Watch, Inc. v. DOJ*, 185 F.Supp.2d 54, 60 (D.D.C.2002) ("*Judicial Watch III*"). Plaintiff's status as a non-profit organization does not relieve it of its obligation to satisfy the statutory requirements for a fee waiver. *D.C. Technical Assistance Org., Inc. v. U.S. Dep't of Housing & Urban Dev.*, 85 F.Supp.2d 46, 48 (D.D.C.2000) (citations omitted).

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted where there exists "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, the Court must review the facts in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

**A. The Public Interest Factors**

 In denying VoteHemp's request for a fee waiver, the DEA determined that the disclosure VoteHemp seeks in not in the public interest. Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment and Memorandum of Law in Support of Their Cross–Motion for Partial Summary Judgment ("Defs.' Opp'n")

at 7. There are four factors that the Court must consider in sequence in determining whether the disclosure VoteHemp seeks is in the public's interest. *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 48. These factors are: (1) the subject matter of the request; (2) "the informative value of the information to be disclosed"; (3) "[t]he contribution to an understanding of the subject by the public likely to result from disclosure"; and (4) "[t]he significance of the contribution to public understanding." 28 C.F.R. § 16.11(k)(1)(i)-(iv); *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 48–49. According to the defendants, plaintiff has failed to meet three of these factors, namely: that the information has informative value, that disclosure will contribute to the public's understanding of the subject; and that the disclosure would not contribute significantly to the public's understanding the subject. Defs.' Opp'n at 7.

**(1) The Informative Value of the Disclosure**

After first determining whether the subject matter of the requested documents specifically relates to the "operations or activities of the government," *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 46, which in this case is conceded by the defendants, the Court, in evaluating whether the informative value of disclosure favors VoteHemp's request for a fee waiver, must next assess "[w]hether the disclosure is 'likely to contribute' to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii); *Larson*, 843 F.2d at 1483; *Judicial Watch, Inc. v. Rossotti*, No. 01–1612, 2002 WL 535803, at *4 (D.D.C. Mar. 18, 2002); *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 48. The documents must be of such a nature that they will be "meaningfully informative about government operations or activities

in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 28 C.F.R. § 16.11(k)(2)(ii). For this reason, documents that are "already ... in the public domain, in either a duplicative or a substantially identical form" are not "as likely to contribute" to the public's understanding. *Id.* In evaluating the informative value of the information sought to be disclosed, "fee waiver requests are to be examined in light of the identity and objectives of the requester ...[,] the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons ... and the requester's capacity to disseminate the requested information ..." *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 48–49 (internal citations omitted).

In its denial letter, the DOJ stated that plaintiff failed to satisfy this prong of the public interest test because some of the records it seeks have already been made publicly available and plaintiff had failed to state with specificity how it would disclose the records to the public. Streenstra Decl. Ex. 8 at 2–3. In response, plaintiff argues that the "vast bulk of the records sought— some 32,000 pages to be searched ... [-] have never been made public [and] DEA's reasoning for issuing the 'Interpretive Rule' occupies but a few pages in the Federal Register." Pl.'s Mem. at 10. Plaintiff further argues that it would disseminate the information it is seeking to acquire through its website, which receives more than 5,000 hits per day, "through press releases and similar material and through communications with members and state legislatures." Streenstra Decl. ¶ 3.

Although plaintiff argues that disclosure would "contribute significantly to public understanding of DEA's operations—spe-

cifically, factual and policy reasons underlying DEA's actions with respect to industrial hemp ...[,]" Streenstra Decl. Ex. 7, the plaintiff has failed to carry its burden to show that the documents it seeks will give the public a greater understanding of why the DEA has designated products containing THC as a Schedule I controlled substances, beyond what it has already stated in the Interpretive Rule itself. In particular, the Interpretive Rule provides, in pertinent part:

> DEA has repeatedly been asked in recent months whether the THC content of [hemp] products renders them controlled substances despite the fact that they are reportedly made from portions of the cannabis plant that are excluded from the definition of marijuana. In DEA's view, the answer lies in the plain language of the [Controlled Substances Act], which states that 'any material ... which contains any quantity of Tetrahydrocannabinols' is a schedule I controlled substance. The CSA does not state that any material ... containing THC is only a controlled substance if it fits within the definition of marijuana. . . .
>
> Several members of the public who have corresponded with DEA disagree with the above interpretation of the CSA. . . . In light of such comments from the public, set forth below is a detailed analysis of pertinent legal authorities.

66 Fed.Reg. at 51,530. The DEA has unambiguously and thoroughly articulated the reason underlying the adoption of the Interpretive Rule in the rule itself. The legal authority upon which the DEA relies for the adoption of the rule is then fully set forth in the "Supplementary Information" that follows the rule.

Plaintiff has failed to demonstrate what additional contribution the information it seeks will add to the public's understand-

ing of why the DEA has concluded that products containing any amount of THC should be classified as a Schedule I controlled substance. Plaintiff's explanation in its initial request, *i.e.*, that "[d]isclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government . . . [,]" Steenstra Decl. Ex. 2, clearly fails to satisfy plaintiff's burden of demonstrating with "reasonable specificity" how the disclosure will contribute to public understanding. *See Larson*, 843 F.2d at 1483. *See also Rossotti*, 2002 WL 535803, at *4 (denying plaintiff's fee waiver request and holding that plaintiff's "vague statements about the public interest served by disclosure— for example, that 'there is an unequivocal public interest served by revealing the aforementioned documents' . . . f[e]ll far short of *Larson*'s requirement that the requester explain with 'reasonable specificity' how disclosure will contribute to public understanding.") (citation omitted); *McClellan*, 835 F.2d at 1286 ("Based on the record, however, disclosure of this information would result in only limited public understanding . . . Requesters' request asks for a large volume of information, some of it technical, much of it identified only by broad categories. The requester's size and lack of specificity do not improve requester's case for waiver.") (citations omitted).

The Court appreciates that solely because the information plaintiff seeks to obtain is already in the public domain does not foreclose plaintiff's ability to obtain a fee waiver. *Campbell v. U.S. DOJ*, 164 F.3d 20, 36 (D.C.Cir.1998). However, in this case, plaintiff has also failed to demonstrate how the materials it seeks will likely contribute further to the public's understanding of governmental operations or activities. *See Judicial Watch III*, 185 F.Supp.2d at 61 (holding plaintiff failed to

satisfy the "informative value" of the public interest test because it "fail[ed] to provide details specific to this FOIA request indicating how the information sought will contribute to an increased understanding of government operations or activities. . . . Moreover, such statements must be supported by facts in order to satisfy the burden placed on the requester of a fee waiver."); *Judicial Watch Inc. v. DOJ*, 122 F.Supp.2d 5, 9 (D.D.C.2000) (*"Judicial Watch II"*) ("Under the FOIA and applicable DOJ regulations, a requester must do more to be eligible for a fee waiver than simply assert that its request somehow relates to government operations.") (citation omitted). In fact, plaintiff provides no information regarding why the information it seeks is " 'likely to contribute' to an increased public understanding of [the DEA's] operations or activities[,]' " 28 C.F.R. § 16.11(k)(2)(ii), in light of the fact that the agency has already issued a document setting forth the justifications for its actions. *See Judicial Watch II*, 122 F.Supp.2d at 9 (holding that requester's statement that disclosure of the documents it sought concerned "the operations and activities of the government" was insufficient to satisfy its burden.). Moreover, there is no evidence in the record that supports plaintiff's allegations that the DEA has some ulterior motive behind the issuance of the Interpretive Rule that the public should be privy to. Plaintiff's claim is nothing more than rank speculation. *See D.C. Technical Assistance Org.*, 85 F.Supp.2d at 49 (denying plaintiffs' request for a fee waiver where they failed "to make a colorable showing that their claim of HUD's bad faith effort to destroy [plaintiffs' organization] has any basis in reality, or that the information they seek 'will give [the organization] and its thousands of constituents greater understanding of why HUD withdrew funding and

will help them ... keep their programs funded in the future.") (citations omitted). For these reasons, the Court agrees with the defendants' position that plaintiff has failed to establish that the disclosure it seeks has informative value.[6]

### (2) Contribution to Public's Understanding of the Subject Matter of the Request

For disclosure to contribute to the public's understanding of the subject, "[t]he disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester." 28 C.F.R. § 16.11(k)(2)(iii). Regarding this factor, the DOJ's denial letter states that plaintiff failed to provide "information ... with regard to how in this instance, VoteHemp plans to disseminate the requested information." Streenstra Decl. Ex. 8 at 2. Plaintiff argues that it has satisfied this prong of the test by demonstrating that it has the capacity to disseminate the requested information through its website and press releases. Pl.'s Mem. at 12.

In assessing the contribution to the public's understanding that disclosure would provide, "a court must consider the requester's 'ability and intention to effectively convey' or disseminate the requested information to the public." *Judicial Watch III*, 185 F.Supp.2d at 62 (citations omitted); *see also D.C. Technical Assistance Org.*, 85 F.Supp.2d at 49 (Court must look to "the scope of the requester's proposed dissemination—whether to a large segment of the public or a limited subset of persons ... and the requester's capacity to disseminate the requested information.") (citations omitted). The Court does not agree with defendants that plaintiff cannot meet this burden. Defendants argue that "[t]he mere existence of a website yields no insight into how the requester actually intends to use the information it receives or whether that use will effectively disseminate the information to the public at large." Defs.' Opp'n at 12. In its appeal letter, VoteHemp stated

> VoteHemp will use such information to educate and inform the public, and their elected representatives, of the reasons behind DEA's actions. VoteHemp disseminates its views, including such information, to the public through its website, through press releases and similar materials and through communications with Members of Congress and state legislators.

> VoteHemp seeks access to such materials so that it can respond to DEA's assertions in VoteHemp's communications, with elected officials on behalf of those citizens who believe that industrial hemp products should be legal and widely available and in VoteHemp's communications with the public.

Streenstra Decl. Ex. 7.

The Court finds these representations convincing. Although plaintiff did not specifically state that "VoteHemp will disseminate the information it receives to the public through its website, etc." it effectively conveys the organization's intent to distribute the information to the public through its website and press releases and through actively writing congressional members and state legislatures. This, the Court concludes, is sufficient to demonstrate that the information would be disseminated to the public at large. *See Judicial Watch III*, 185 F.Supp.2d at 62

---

6. Despite the DEA's arguments that plaintiff had failed to demonstrate how it would disseminate the information it seeks, as will be discussed further below, the Court does not find this factor weighed against granting plaintiff's request.

(holding that plaintiff satisfied its burden of establishing it would disseminate the information it sought to the public where, "[a]lthough the plaintiff has not gone into great detail about how it plans to disseminate the particular information obtained through this FOIA request[,] Judicial Watch has described several methods it uses to make information available to the public, it has a record of conveying to the public information obtained through FOIA requests, and it has stated its intent to do so in this case."); *D.C. Technical Assistance Org.*, 85 F.Supp.2d at 49 (holding that plaintiff's statements that it would disseminate the information it sought to its "various ... resident councils, which in turn would distribute it to residents in their respective communities; and that ... [its] executive director, has a demonstrated ability to disseminate information on [its] behalf ..." was sufficient to satisfy its burden under the public interest test. "In this Information Age, technology has made it possible for almost anyone to fulfill this requirement."). *Cf. Judicial Watch II*, 122 F.Supp.2d at 10 (holding that plaintiff did not satisfy its burden of demonstrating that it would disseminate the information at issue because, although it stated the methods by which it disseminated information generally, it "did not, however, express a specific intent to publish or disseminate the information at issue. Because Judicial Watch has not offered any concrete plans to disseminate the requested information ... it has failed to meet its burden under the third factor.") (citations omitted).

**(3) The Significance of the Contribution to the Public's Understanding**

Lastly, the Court must consider whether the disclosure VoteHemp seeks is "likely to contribute 'significantly' to public understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(iv); *Ju-dicial Watch III*, 185 F.Supp.2d at 62. In analyzing this factor, the Court must determine whether "[t]he public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, [would] be enhanced by the disclosure to *a significant extent.*" 28 C.F.R. § 16.11(k)(2)(iv) (emphasis added).

In its denial of plaintiff's appeal, the DOJ found that "[p]ortions of the records" sought by plaintiff have "already been made available through public sources." Streenstra Decl. Ex. 8 at 2. In addition, the letter stated that VoteHemp had failed to describe "with specificity how disclosure ... will foster public understanding of the DEA's operations in a significant way." *Id.*

In its initial request, plaintiff did not address at all how the information it sought would contribute significantly to the public's understanding of DEA's Interpretive Rule. *See* Streenstra Decl. Ex. 2 ("Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government ..."). In its administrative appeal of the denial of its request for a fee waiver, plaintiff elaborates on this statement and makes assertions regarding wanting to reveal "the true concerns of the DEA in its efforts to outlaw industrial hemp oil and seed products ..." and its intent to use the disclosed documents in responding to assertions DEA Administrator Hutchinson made in a letter sent to members of Congress that contained "misrepresentations of fact" and references to "studies, reports and other factual materials on which the DEA has apparently ... relied [upon] in promulgating its 'interpretive' proposed rules outlawing seed and oil products." Streenstra Decl. Ex. 7. However, aside from plaintiff's conclusory allega-

tions that the DEA has ulterior concerns or motives for issuing its Interpretive Rule and speculation about its reliance on "studies, reports and other factual material[,]" there is no reason to believe that the documents plaintiff seeks will reveal "secret" reports and studies that plaintiff alleges the DEA has utilized in formulating its interpretive rule. . Even if such reports exist and were disclosed, plaintiff fails to demonstrate how they will contribute significantly to the public's understanding of this issue. All plaintiff states is that the documents "will contribute significantly to public understanding of DEA's operations—specifically, factual and policy reasons underlying DEA's actions with respect to industrial hemp, which reasons have not been set forth anywhere in the public record." Streenstra Decl. Ex. 7. These statements, while lofty, do not provide *specific* information as to the significance of the purported disclosure, or how this information will enhance the public's understanding of this issue, particularly in light of the fact that the DEA has already issued an explanation for the adoption of its Interpretive Rule, upon which the validity of the rule either prevails or must be rejected. *See McClellan*, 835 F.2d at 1286 (denying plaintiff's request for a fee waiver where, "[b]ased on the record . . . the disclosure would not appear to make a *significant* contribution to public understanding. . . . Without more specific information, which was not on the record before the agency, we have no reason to conclude that disclosure of the information will have much significance.") (emphasis in original); *Judicial Watch III*, 185 F.Supp.2d at 62 (holding plaintiff failed to satisfy its burden of demonstrating that disclosure of the documents it sought would contribute significantly to the public's understanding

where "plaintiff [made] only conclusory statements about how the public's understanding will be furthered but [did] not describe with any specificity how the disclosure of these particular documents will "enhance" public understanding to a significant extent."); *Judicial Watch II*, 122 F.Supp.2d at 11 (holding plaintiff failed to satisfy public interest factor, which requires that the information it sought contribute significantly to the public's understanding of the subject at issue, stating "Judicial Watch does not establish a link between public concern with the 'integrity and operations' of the government and the information it seeks. In sum, Judicial Watch does not explain how the requested information will enhance the public's understanding of government operations or activities.").

## B. Commercial Interest

■ As additional justification for its denial of plaintiff's fee waiver request, the DEA concluded that plaintiff has a commercial interest in the disclosures sought. Defs.' Opp'n at 16. Defendants categorized plaintiff's request as a "commercial use request" which is defined as "a request from or on behalf of a person who seeks information for a use or purpose that furthers his . . . commercial, trade, or profit interests, which can include furthering those interests through litigation." 28 C.F.R. · § 16.11(b)(1). Plaintiff has not challenged this categorization of its request.[7] ·

In analyzing the commercial interest factor, agencies are instructed to consider "the existence and magnitude of a commercial interest." 28 C.F.R. § 16.11(k)(3)(i). When considering this

---

7. Specifically, plaintiff has not challenged the DEA's denial of its request that it be granted status is "an educational institution and/or

member of the news media status." Steenstra Decl. Ex. 6 at·2.

factor, the agency is entitled to consider "any commercial interest of the requester ... or of any person on whose behalf the requester may be acting." *Id.; see also Rozet v. Dep't of Housing and Urban Dev.*, 59 F.Supp.2d 55, 57 (D.D.C.1999) (quoting HUD regulations defining "commercial use" that provided that the agency could look to "interests of the requester or the person on whose behalf the request is made."). Next, the agency should consider "the primary interest in disclosure." 28 C.F.R. § 16.11(3)(ii).

In arguing that the plaintiff's interest in disclosure is commercial, the defendants note that plaintiff's website states that it is organized to "promote the 'acceptance of and free market for Industrial Hemp.'" Defs.' Opp'n at 16 (quoting portions of plaintiff's website). The defendants also note that plaintiff's website contains direct links to the websites of companies that sell hemp products and asks visitors to the website to donate money to support the *"industry's* legal effort." *Id.* at 17.[8]

"Information is commercial if it relates to commerce, trade or profit." *McClellan*, 835 F.2d at 1285 (citation omitted). A review of plaintiff's website pages demonstrates that indeed it has a commercial interest in the information it is seeking to obtain. Although plaintiff claims that it is *"not* acting on behalf of the hemp products industry and is not serving those 'who are in the business of cultivating hemp[,]'" Pl.'s Mem. at 15, the Court finds this position conflicts with the information contained in plaintiff's website. As the website clearly states, "Vote Hemp is a non-profit organization dedicated to the full deregulation of and a free market for Industrial Hemp." Defendant's Response to Plaintiff's Statement of Material Facts as to Which There is no Genuine Issue

("Defs.' Resp."), Declaration of Katherine L. Myrick, Chief, Freedom of Information Operations Unit, Freedom of Information and Records Management Section, Drug Enforcement Administration ("Myrick Decl.") Ex. H (selected pages from plaintiff's website). Despite this statement, VoteHemp argues that the claim that it is "'promoting business' is like saying that seniors' organizations that advocate lowering prescription drug prices through wider availability of generic drugs are merely promoting the generic drug industry, or that environment groups that advocate alternative fuels are merely promoting the ethanol industry." Pl.'s Mem. at 15–16. However, unlike a group that advocates, for example, in support of lower drug prices for senior citizens through the use of generic drugs, which admittedly may indirectly benefit generic drug manufacturers, VoteHemp specifically advocates for a free market for industrial hemp, a position that could directly benefit those who seek to make a profit from deregulation, such as farmers and commercial entities. Thus, plaintiff's advocacy for a free market in hemp, its association with businesses with a commercial interest in hemp products, coupled with the potential benefit that businesses would acquire from disclosure support the DEA's finding that plaintiff has a commercial interest in the disclosure sought. Therefore, the Court concludes that VoteHemp, as an advocate for a free market in industrial hemp, has a commercial interest in the information that it seeks to have disclosed. *Cf. Rozet*, 59 F.Supp.2d at 57 (denying plaintiff's request for a fee waiver and finding that the plaintiff had a commercial interest in the information sought where "Mr. Rozet filed his initial FOIA requests five months after HUD had brought its lawsuit against him

---

**8.** Defendants note that plaintiff's current request "goes to the very heart of the issue

being litigated in the Ninth Circuit." Def.'s Opp'n at 18.

and his corporations. The nexts with the lawsuit established by the timing of the FOIA requests and their content demonstrates conclusively that the FOIA requests advance Mr. Rozet's commercial interest, rather than the public interest. Plaintiff's assertion that he will not put the information to a commercial use cannot be credited.'); *S.A. Ludsin & Co. v. U.S. Small Business Administration,* No. Civ. A.96–2146, 1997 WL 337469, at *7 (S.D.N.Y. June 19, 1997) (denying plaintiff's request for a fee waiver where he sought documents pertaining to real estate he was selling on behalf of the Small Business Association. "The private, commercial benefit to Ludsin is clear. The public benefit, however, is not. First, the public benefit is financial, not the public understanding of government operations that Congress defined as the 'public interest' to be considered in FOIA fee waiver requests.").

### III. Conclusion

For the reasons stated above, the Court concludes that plaintiff has failed to satisfy two of the four public interest factors necessary to justify granting its request for a fee waiver. In addition, the Court concludes that plaintiff has a commercial interest in the information it seeks to obtain and therefore should not be granted a fee waiver. Accordingly, the Court concludes that plaintiff's motion for partial summary judgment must be denied and that defendants' cross motion for partial summary judgment must be granted.

### *ORDER*

For the reasons set forth in the Memorandum Opinion that accompanies this Order, it is hereby **ORDERED** that plaintiff's Motion for Partial Summary Judgment [# 10] is denied. It is further **ORDERED** that defendant's Cross–Motion for Partial Summary Judgment [# 11] is granted.